# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

KURTIS M.,

                                        Plaintiff,

            v.                                        6:19-CV-603 (ATB)


COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

---

HOWARD D. OLINSKY, for Plaintiff
SIXTINA FERNANDEZ Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 7).

## I.   PROCEDURAL HISTORY

This case has a lengthy administrative history.  Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on April 12, 2011, alleging disability beginning November 5, 2010. (Administrative Transcript ("T") 11, 258-59). Plaintiff's application was denied initially on June 3, 2011. (T. 114-17).  The first administrative hearing on this application was held before Administrative Law Judge ("ALJ") Barry E. Ryan on August 21, 2012. (T. 79).  On September 4, 2012, ALJ Ryan found that plaintiff was capable of performing his past relevant work as a computer

technician manager, and issued an order denying plaintiff's claim. (T. 76-92).

After plaintiff requested review, the Appeals Council vacated and remanded ALJ Ryan's decision on March 21, 2014, for further evaluation of the medical opinion evidence and plaintiff's ability to perform his past relevant work. (T. 93-97). ALJ Ryan held a second administrative hearing on June 7, 2016, at which plaintiff appeared without counsel. (T. 101, 168, 191). On June 23, 2016, ALJ Ryan found that plaintiff was disabled as of August 19, 2011. (T. 98-107).

Although the ultimate determination of disability was favorable, plaintiff filed a request for appeal. (T. 215). In his second decision, ALJ Ryan stated that plaintiff had "amended the alleged onset date of disability to August 19, 2011." (T. 101, 111). Plaintiff argued that he had never sought an amended onset date. (T. 111, 215, 412-413). On October 26, 2017, the Appeals Council found that there was no record evidence hat plaintiff had requested an amended onset date of disability, but also found that ALJ Ryan had not adequately supported his RFC determination or his determination that there were no jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 111-12). Because ALJ Ryan had already considered plaintiff's application twice, the Appeals Council remanded the case to a new ALJ. (T. 113).

In accordance with the Appeals Council's order, ALJ Kenneth Theurer held an administrative hearing on April 13, 2018, at which plaintiff and vocational expert ("VE") Robin Cook testified. (T. 31-73). Plaintiff appeared without counsel. (T. 34-35). On May 30, 2018, ALJ Theurer found that plaintiff was not disabled from the alleged onset date of November 5, 2010 through September 30, 2011, the date last

2

insured. (T. 22).   ALJ Theurer's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 22, 2019. (T. 1-5).   Therefore, ALJ Theurer's May 30, 2018 decision is the only decision at issue in this judicial proceeding.[1]

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).   In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner]

---

[1] Accordingly, all further references to the ALJ in this Memorandum-Decision refer only to ALJ Theurer.

next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

III.   **FACTS**

Plaintiff was thirty-three years old on the date last insured. (T. 20, 258). He was married, and lived with his wife and two young children. (T. 55-56, 932). After graduating high school in regular education classes, plaintiff attended college but did not graduate. (T. 41, 290). He subsequently completed several vocational training programs in electronics, information technology, and real estate. (T. 41, 289-90).

Plaintiff's previous employment included work as a truck driver, sales representative, and general contractor. (T. 41-43, 290). Most recently, plaintiff had worked as a manager at a computer repair business. (T. 43-45, 290). In this position,

his responsibilities included bookkeeping, supervising and training employees, as well as performing computer repairs onsite and at customer locations. (T. 44-45).  He left this position in 2010 due to his physical limitations. (T. 45).

In 2000, plaintiff was involved in a serious car accident that resulted in bulging and herniated discs in his lumbar spine. (T. 548, 563).  His physical condition generally improved with physical therapy and epidural treatment, but he continued to have back pain. (T. 563).  In October 2010, plaintiff was involved in another motor vehicle accident, that resulted in new injuries to his cervical and thoracic spine, and aggravated his existing lumbar spine injury. (T. 563, 932).  He underwent lumbar spine fusion surgery in 2011, but still experienced back spasms and pain in his upper and lower lumbar spine area that radiated into his legs. (T. 47-54, 700-703, 932).  Plaintiff had consulted with his physicians on whether further surgery would alleviate these symptoms, and continued to treat with pain medication. (T. 49-51, 553-54).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 14-20).  Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   THE ALJ'S DECISION

After reviewing the procedural history of the plaintiff's application and stating the applicable law, the ALJ found that plaintiff met the insured status requirements through September 30, 2011.  The ALJ then determined that plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset date of November 5, 2010 through his date last insured. (T. 13-14).  At step two of the sequential evaluation,

the ALJ found that plaintiff had the following severe impairments: status post lumbar spine surgery and status post bilateral knee surgery. (T. 14).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment. (T. 14-15).

At step four, the ALJ found that plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b). (T. 15-20).  Specifically, the ALJ found that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; could sit, stand, and walk each for six hours in an eight hour workday with normal work breaks; and had no limitations with regard to the use of his hands and feet. (T. 15).  The ALJ also found that plaintiff could use ramps and stairs frequently, and use ladders or scaffolds occasionally. (*Id*.)  He also found that plaintiff could balance and stoop continuously; kneel and crouch frequently; and crawl occasionally. (*Id*.)

In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p. (T. 15).  The ALJ further stated that he considered opinion evidence pursuant to 20 C.F.R. § 404.1527. (*Id*.)  The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 16).

The ALJ then determined that plaintiff was unable to perform any past relevant

work. (T. 20).  However, the ALJ evaluated the VE testimony, and found that "considering the [plaintiff']'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed." (T. 21).  Accordingly, the ALJ determined that plaintiff was not disabled. (T. 22).

## V.   ISSUES IN CONTENTION

Plaintiff raises two arguments:

1. The ALJ erred in finding that plaintiff's thoracic and cervical spine injuries did not constitute severe impairments. (Plaintiff's Brief ("Pl.'s Br.") at 22-25) (Dkt. No. 9).

2. The ALJ improperly weighed the medical evidence, particularly the treating physician opinion of Dr. Christopher Black. (Pl.'s Br. at 16-21).

Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 7-15) (Dkt. No. 10).  For the reasons stated below, this court agrees with defendant and will dismiss the complaint.

## DISCUSSION

## VI.   SEVERE IMPAIRMENT

### A.   Legal Standards

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis.  *Rhondalee T. v. Berryhill*, No. 3:17–CV–1241 (CFH), 2019 WL 1100267, at *5 (N.D.N.Y. Mar. 8, 2019) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)).  A severe impairment is one that significantly limits the

plaintiff's physical and/or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).  "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis.  The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe.  *Monique Danielle W. v. Comm'r of Soc. Sec.,* No. 5:18-CV-184 (DNH), 2019 WL 2358529, at *4 (N.D.N.Y. June 4, 2019) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Mark K. v. Comm'r of Soc. Sec. Admin.,* No. 5:18-CV-627 (GLS), 2019 WL 4757381, at *1 (N.D.N.Y. Sept. 30, 2019) (quoting *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)).  Although an impairment may not be severe by itself, the ALJ must also consider "the

9

possibility of several such impairments combining to produce a severe impairment . . .

." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985).  However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work, will not be considered severe.  *Id.*  The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id.*

The step two analysis "may do no more than screen out *de minimis* claims."  *Vogt on behalf of Vogt v. Comm'r of Soc. Sec.,* No. 18-CV-231, 2019 WL 4415277, at *4 (W.D.N.Y. Sept. 16, 2019) (quoting *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir. 1995)).  If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five.  *Dixon,* 54 F.3d at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone.  *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244 (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)).  This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity.  20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54

F.3d at 1031.

> **B.     Application**

Plaintiff contends that the ALJ should have found that the injuries to his thoracic and cervical spine constituted severe impairments. (Pl.'s Br. at 22-25).  This court disagrees, and finds that the ALJ's step two determination was supported by substantial evidence.

In his decision, the ALJ concluded that plaintiff's cervical spine disorder and thoracic spine disorder were not severe impairments, because the record did not show significant limitations that lasted for at least twelve continuous months prior to his date last insured.[2] (T. 14).  In support of this finding, the ALJ cited notes from an October 15, 2010 CT scan that described plaintiff's cervical spine as "[n]ormal," with "[n]o evidence for acute cervical pathology or trauma/injury"and plaintiff's thoracic spine as "[n]ormal appearing" with no evidence for acute pathology or trauma/injury." (T. 14, 538-39).  The ALJ also relied on treatment notes from multiple treating physicians that described  "mild" or "minimal" impairments and "no significant degenerative changes" of plaintiff's cervical spine and thoracic spine observable in plaintiff's December 16, 2010 MRI results. (T. 550-552, 554, 575-76, 591-92).  The ALJ's conclusion regarding the severity of these impairments was also consistent with the findings of independent medical consultant Dr. W. Janese, who reviewed plaintiff's medical records and opined that plaintiff's neck pain, associated with cervical and thoracic spinal injuries, did not

---

[2] To be entitled to DIB, plaintiff had to establish disability prior to his date last insured. *Arone v. Bowen*, 882 F.2d 34, 37–38 (2d Cir.1989).  In this case, the date last insured is September 30, 2011. (T. 14).

rise to the level of a severe impairment. (T. 668).

Because there is substantial evidence in the record to support the ALJ's step two determination with regard to plaintiff's thoracic and cervical spine injuries, this court will not disturb his findings.  Moreover, because the ALJ did not deny plaintiff's claim at step two of the sequential analysis, and considered plaintiff's neck and back pain and the resulting limitations on plaintiff's ability to lift, carry, and perform other work-related tasks as part of his RFC analysis, this court further finds that any error in excluding plaintiff's cervical and thoracic spine injuries from the list of severe impairments would be harmless. (T. 18-19).

## VII.   RFC/WEIGHT OF THE EVIDENCE/TREATING PHYSICIAN

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings."  The responsibility for

determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If an ALJ decides not to give the treating source's records controlling weight, then he or she must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). "[T]he ALJ must 'give good reasons in [its]

14

notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

### B.    Application

Plaintiff argues that the ALJ should have assigned greater weight to opinions dated May 12, 2015 and March 19, 2018 from Dr. Christopher Black, a general practitioner who had treated plaintiff on an intermittent basis since at least 2011. (T. 575, 761, 768-773).  In May 2015, Dr. Black opined that plaintiff could lift up to twenty pounds and carry up to ten pounds on an occasional basis, or up to one-third of the workday. (T. 768).  He further opined that plaintiff could only sit for one hour continuously, could only stand for fifteen minutes at one time, and could only walk for five minutes without interruption. (T. 769).  In Dr. Black's opinion, plaintiff could sit for a total of six hours, stand for a total of two hours, and walk for a total of thirty minutes over the course of a workday. (*Id.*)  He also opined that plaintiff could occasionally reach overhead, but could frequently reach otherwise; could frequently handle, finger, and feel objects with his hands; and was unable to  climb ladders, kneel, crouch, or crawl. (T. 770-771).  Although he did not issue the opinion until May 13 2015, Dr. Black stated that it reflected plaintiff's condition as of August 2011. (T. 773).

Dr. Black's March 19, 2018 opinion was quite similar, but reflected slightly fewer restrictions. (T. 1074-82).  He opined that plaintiff could occasionally lift or carry up to twenty pounds; could stand or walk for up to two hours total during an eight hour workday; and could sit for about six hours total during an eight hour workday. (T. 1076).  In Dr. Black's opinion, plaintiff was limited to occasional use of his upper and lower extremities; could occasionally reach; and could frequently use his hands to finger, feel, and handle. (T. 1078).  He also opined that plaintiff should avoid workplace environments that required exposure to extreme temperatures, vibration, and similar hazards. (T. 1079).

The ALJ assigned "little weight" to the standing, walking, postural, manipulative, and environmental limitations in Dr. Black's two opinions. (T. 17).  He gave "partial weight" to Dr. Black's opinions regarding plaintiff's ability to lift, carry, and sit, because they were generally consistent with the other record evidence. (*Id*.)  In reaching these conclusion, the ALJ offered a number of valid reasons for the various weights assigned to discrete portions of Dr. Black's opinions.

Both of Dr. Black's opinions were completed on a "check the box" form, that provided minimal narrative description. (T. 768-773, 1075-79).  The ALJ found that the record contained few treatment notes from Dr. Black that covered the relevant period between November 5, 2010 and September 30, 2011. (T. 17).  Plaintiff correctly notes that the record included correspondence from July 2010 and January 2011 indicating that Dr. Black had referred plaintiff for specialized treatment, and was involved in plaintiff's medical care. (T. 575-80).  However, plaintiff has not identified any actual

16

examination notes from Dr. Black that would bolster his restrictive opinions.  Plaintiff has also not identified any failure on the part of the ALJ to seek out any missing medical records.  Indeed, the ALJ successfully contacted Dr. Black for updated medical records, and there is no indication that any of his treatment notes were missing or unavailable. (T. 35-36, 972-1014).  "[W]here there are no obvious gaps ... and where the ALJ already possesses a 'complete medical history,' " the ALJ is under no obligation to seek additional information.  *Rosa v. Callahan*, 168 F.3d 72, 79, n.5 (2d Cir. 1999).

The ALJ also found that some of the restrictions described by Dr. Black were inconsistent with plaintiff's treatment records from other physicians. (T. 17).  Dr. Ross Moquin, who also evaluated plaintiff on January 7, 2011, opined that plaintiff had degenerative changes in the lumbar spine and an antalgic gait, but showed full range of motion in his back and neck, and no significant degenerative changes in his cervical spine. (T. 575).  The record indicates that Dr. Moquin provided Dr. Black with a copy of these findings. (*Id.*)  As part of the RFC analysis, the ALJ also reviewed examination notes signed by Dr. Edward Scheid, who evaluated plaintiff's need for lumbar surgery on June 20, 2011. (T. 590-92).  Dr. Scheid found that plaintiff had normal gait and posture, full strength in the upper and lower extremities, and normal range of motion in the cervical spine, despite lower back pain that warranted surgery.  (T. 591).  On September 16, 2011, one month after L4-S1 lumbar fusion surgery, Dr. Scheid's nurse practitioner observed that plaintiff "ambulates in a very steady fashion."  (T. 19, 599).

The ALJ also noted that the evidence from shortly after the September 30, 2011

date last insured was also consistent with his RFC findings.  (T. 19).  For example, on October 18, 2011, Plaintiff continued to have full motor strength in the lower extremities and grossly intact sensation.  (T. 19, 601).  Perhaps the most critical inconsistency between Dr. Black's opinions and the ALJ's light-work RFC involved the extent to which plaintiff's ability to walk and stand was limited.  Thus, the ALJ's observation that, on November 21, 2011, plaintiff reported, during a neurosurgical follow-up visit that he was doing much better and was walking on a daily basis, provides significant support for the RFC and the relative weight given by the ALJ to the contrary opinions of Dr. Black.  (T. 19, 606).

The ALJ also discounted Dr. Black's opinions because both were authored "well after the date last insured," an approach that he followed with other medical opinions in the record. (T. 16-17).  For example, consultative examiner Dr. Elke Lorensen opined that plaintiff had no gross limitations with sitting, standing, or handling small objects, and moderate limitations in bending, lifting, reaching, and turning his head. (T. 934). The ALJ assigned this opinion partial weight because it was based on an evaluation performed in May 2016. (T. 16).

The ALJ's concern regarding the timing of the opinion seems particularly applicable to Dr. Black's opinions.  Despite his status as a treating physician, Dr. Black's notes indicate that he had not seen plaintiff for more than three years prior to an office visit in April 2014. (T. 975).  This gap, along with the limited treatment notes for the relevant period between November 2010 and September 2011, made it reasonable for the ALJ to conclude that Dr. Black had less direct observation of plaintiff's physical

limitations than might ordinarily be expected of a treating physician.

In determining plaintiff's RFC, the ALJ gave great weight to the opinion of non-examining medical expert Dorothy Leong, M.D., who was asked, in November 2017, to evaluate the prior medical records and evaluate plaintiff's limitations prior to September 30, 2011.  (T. 16, 944, 963, 967-968).  Dr. Leong explicitly opined that plaintiff retained the ability to meet the exertional requirements of light work.  (T. 957-960, 968).  While acknowledging that Dr. Leong did not examine or treat plaintiff, the ALJ credited her opinion because of her expertise in pain management and knowledge of disability programs, as well as the fact that she reviewed nearly all of the medical evidence of record.  (T. 16, 970-971).  The ALJ also found that Dr. Leong's opinion was supported by the objective evidence in the record from the relevant time period. (T. 16).

Given the ALJ's reasonable reservations about aspects of Dr. Black's opinions and those of other treating providers and medical experts (T. 16-18), the ALJ's request for, and reliance upon, the opinion of an additional medical expert focusing on plaintiff's limitations before September 30, 2011, was appropriate.[3]  *See, e.g., Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency

---

[3] The ALJ gave "partial weight" to the February 4, 2012 opinion of medical expert Woodward Janese, M.D., whose medical interrogatory responses also supported the light work RFC.  (T. 16, 668-676).  However, the ALJ concluded that Dr. Janese underestimated plaintiff's functional limitations because he did not account for his documented bilateral knee disorder.  The ALJ gave "limited weight" to the February 10, 2012 opinion of medical expert Louis Fuchs, M.D.  In light of the objective clinical findings identified in postoperative examinations of plaintiff, the ALJ found that Dr. Fuch's opinion overestimated claimant's standing, walking, manipulative, and postural limitations.  (T. 16-17, 766-685).  The ALJ also gave limited weight to the opinions of two treating physician assistants who found that plaintiff had more significant physical limitations because those opinions were not supported by the same postoperative examinations.  (T. 17-18).

medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Christy v. Comm'r of Soc. Sec.*, No. 5:13-CV-1552 (GTS/WBC), 2015 WL 6160165, at *10 (N.D.N.Y. Oct. 20, 2015) ("[A]n ALJ may rely on the opinions of non-examining medical experts."); *Herb v. Colvin*, No. 14-CV-156, 2015 WL 2194513, at *5 (W.D.N.Y. May 6, 2015) (consultative examiner's report may serve as substantial evidence upon which the ALJ may base his decision).

Overall, the ALJ applied a consistent standard to the medical opinion evidence from plaintiff's treating physicians, the consultative examiner, and several independent medical examiners. Although no opinion was assigned controlling weight, he assigned the greatest weight to those portions of the opinions that were most consistent with the available treatment record. This decision to discount specific portions of the various opinions was within his discretion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.); *Walker v. Colvin*, No. 3:15-CV-465 (CFH), 2016 WL 4768806, at *10 (N.D.N.Y. Sept. 13, 2016) ("[A]n ALJ may properly 'credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported.'").

At best, plaintiff's complaints regarding the RFC are premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about plaintiff's

physical impairments.  As stated above, it is the province of the ALJ to resolve such conflicts in the evidence.  *Galiotti*, 266 F. App'x at 67.  In doing so, the ALJ could rely not only on treating physician reports, but also the opinions of consultative examiners and independent medical experts.  *See, e.g., Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (rejecting plaintiff's argument that the ALJ's RFC determination was not supported by substantial evidence because the ALJ relied on the opinions of the consultative examiner and the medical expert, which contradicted the opinions of treating sources, but were otherwise supported by the record).  Therefore, the ALJ's determination that plaintiff could perform light work during the relevant period was supported by substantial evidence.

## VIII.  STEP FIVE DETERMINATION

Plaintiff did not raise any direct challenge to the ALJ's reliance upon the VE testimony, so the court will only briefly address the issue.  One of the ALJ's hypothetical questions to the VE mirrored his RFC determination. (T. 64-71).  Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination of disability, were similarly supported by substantial evidence.[4]

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's

---

[4] The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations.  *Calabrese v. Astrue,* 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on an ALJ's RFC analysis, which is supported by substantial facts, the hypothetical is proper.  *Id.* at 276-277.

complaint is **DISMISSED**, and it is

      **ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated: June 11, 2020

Andrew T. Baxter
U.S. Magistrate Judge